W. M. JACKSON, Superintendent of Banks of the State of Georgia, Plaintiff, and The First National Bank of Gainesville et al., Plaintiff-Intervenors,

v.

FIRST NATIONAL BANK OF COR-NELIA, Cornelia, Georgia, Defendant, and William B. Camp, Comptroller of the Currency of the United States, Defendant-Intervenor.

Civ. A. No. 1191.

United States District Court
N. D. Georgia,
Gainesville Division.

Oct. 22, 1968.

———◆———

Arthur K. Bolton, Atty. Gen., Robert J. Castellani, Deputy Asst. Atty. Gen., Harold N. Hill, Jr., Asst. Atty. Gen., Atlanta, Ga., for plaintiff.

Kenyon, Gunter, Hulsey & Sims, Gainesville, Ga., for plaintiff-intervenors.

Joseph A. Griggs, Cornelia, Ga., for defendant.

Edwin L. Weisel, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., C. Westbrook Murphy, Director of Litigation, Office of Comptroller of Currency, Washington, D. C., Charles L. Goodson, U. S. Atty., Atlanta, Ga., for defendant-intervenor.

## ORDER ON SUMMARY JUDGMENT

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which the plaintiff, Superintendent of Banks of the State of Georgia, and plaintiff-intervenors, competing state and national banks, seek to enjoin the defendant First National Bank of Cornelia from operating an "armored car bank messenger service" throughout Northeast Georgia and portions of Western North Carolina, which messenger service plaintiffs contend constitutes illegal mobile branch banking contrary to 12 U.S.C. § 24 (Seventh) and 36(c) and (f) and Title 13 of the Code of Georgia § 201 et seq. Defendant First National Bank of Cornelia (referred to as "defendant bank") answered and counter-claimed for an injunction against plaintiff's interference with this activity and a declaratory judgment that the defendant bank's activities are lawful. The defendant-intervenor is William B. Camp, Comptroller of the Currency of the United States. A hearing was had on September 26, 1968, at the conclusion of which oral bench rulings were made. Now, the court formally makes the following

## FINDINGS OF FACT

The original plaintiff in this suit is W. M. Jackson, Superintendent of Banks of the State of Georgia, whose duty it is to administer the Banking Laws of the State of Georgia. Ga.Code § 13–301 et seq. Plaintiff-Intervenors are the First National Bank of Gainesville, Gainesville National Bank, The Union County Bank of Blairsville, Fannin County Bank of Blue Ridge, Habersham Bank of Clarkesville, Bank of Clayton, The Peoples Bank of Cleveland, Northeastern Banking Company of Commerce, Cornelia Bank, Bank of Dahlonega, Bank of Hiawassee, The Bank of Toccoa, The Citizens Bank of Toccoa, Georgia, and the Bank of Franklin, North Carolina. As stated in the counterclaim, these are state and national banks doing business in competition with and in the competitive banking area of defendant bank. (See also affidavit of Jackson introduced at hearing.) The original defendant is the First National Bank of Cornelia, Cornelia, Georgia. The defendant-intervenor is William B. Camp, Comptroller of the Currency of the United States. The undisputed facts are as follows:

1.

The defendant First National Bank of Cornelia was chartered pursuant to the National Banking Act, with its principal office in Cornelia, Habersham County, Georgia. The population of Cornelia, Georgia, is 2,936 according to the 1960 United States Census, United States Department of Commerce.

2.

The defendant bank's "armored car messenger service" was instituted pursuant to defendant comptroller's ruling con-

tained in paragraph 7490 of the Comptroller's Manual:

"To meet the requirements of its customers, a national bank may provide messenger service by means of an armored car or otherwise, pursuant to an agreement wherein it is specified that the messenger is the agent of the customer rather than of the bank. Deposits collected under this agreement are not considered as having been received by the bank until they are actually delivered to the teller at the bank's premises. Similarly, a check is considered as having been paid at the bank when the money is handed to the messenger as agent for the customer." (Defendant bank's answer, Exhibits "B" and "C").

### 3.

Relying on paragraph 7490 of the Comptroller's Manual, defendant bank purchased three armored trucks. Each has a driver's compartment and rear compartment. Two of the trucks have a large plate glass window in the side of the rear compartment together with a pass-through drawer to the outside of the vehicle. Each truck is equipped with a two-way radio, periodically used to dispatch orders pursuant to customers' telephone requests received at defendant bank after the truck has already left the banking house and for emergency purposes. The employee operating each car is armed with a pistol. The defendant bank's armored cars call on 235 customers at least once a week, 220 customers four times a week and approximately 50 customers six times a week. (Affidavit of Reeves attached to defendant-intervenor's motion for summary judgment, page 2 and 3, paragraphs 3 and 4 (c). Defendant's Answer, page 4.)

### 4.

The following transactions are conducted by the defendant bank's messenger service:

(a) *The transmittal of Funds to the Bank:*

The armored car messenger service is provided to call at a customer's place of business to pick up cash and checks for the purpose of transporting them to defendant bank's banking house, where they are deposited to the customer's account. The customers who use the service have accounts with the bank. Prior to using the service, they signed a "Messenger Service Agency Contract" which provided that defendant bank's messenger transports the monies and checks to the banking house as the agent of the customer. When a customer sends funds to the bank, he accompanies them with a transmittal slip on which he itemizes them. The transmittal slip contains a "Contract" which provides that the bank "messenger" is acting as the agent of the customer, and that "the currency, coins and checks transmitted by messenger to the bank's premises will not be deemed to be a deposit until delivered by the messenger into the hands of a teller on the bank's premises." Both the transmittal slip and the messenger service agency contract provide that the bank is maintaining hazard insurance for the protection of the customer. (Defendant bank's answer, pages 4–5, 8–9; Exhibit "A" and "B" attached to Reeves' affidavit in support of defendant intervenor's motion for summary judgment.)

(b) *The Making of Change:*

Each armored car carries between $2,000 and $3,000 of small bills and coins belonging to the bank. A customer using the messenger service may, when the armored car calls, have large bills changed into smaller bills or coins. Such a transaction does not involve checks, but is merely the exchange of cash for cash. (Reeves' affidavit in support of defendant intervenor's motion for summary judgment.)

(c) *The Transmittal of Funds from the Bank:*

The messenger service is also used to transport cash to those customers who have signed the "Messenger Service Agency Contract." The contract provides that in this situation, also, the bank's messenger is acting as the agent of the customer. Sums transported to the customer by this method are with-

drawn by an "Authorization of Debit" (Exhibit "D" to Reeves' affidavit in support of defendant-intervenor's motion for summary judgment) or a withdrawal slip (Exhibit "C" to Reeves' affidavit in support of defendant-intervenor's motion for summary judgment) and the sums are accompanied by a receipt slip (Exhibit "E" of Reeves' affidavit in support of defendant-intervenor's motion for summary judgment) indicating that the customer's account has been charged for the amount of the order. A common use of this service is the delivery of currency and coins to be used as change by businesses. (Defendant bank's answer pages 4–5, 8–9).

(d) *The Furnishing of a Teller's Service for Payroll Cashing*

Defendant bank also uses the armored truck to provide a payroll cashing service to certain of its customers outside the city limits of Cornelia, Georgia. In such instances, funds are delivered by the messenger service to the customer's place of business pursuant to a written order form. For delivery, a teller accompanies the driver of the armored car. When the funds are delivered, the teller accompanies the messenger into the customer's place of business and, at a counter set up by the customer, cashes the payroll checks of the customer's employees, which are drawn not only on defendant bank but on other banks as well. (Pages 3–4, paragraph 4(d) of Reeves' affidavit in support of defendant intervenor's motion for summary judgment.)

5.

The messenger service is operated daily, six times a week. The armored car is owned by the bank and is operated by employees of the bank. The bank also purchased the insurance coverage for the operation. Customers are not charged for the service.

6.

These banking services are provided outside of the city limits of Cornelia, Georgia, including Habersham, Rabun, Stephens, White and Banks Counties, Georgia.

7.

These activities of defendant bank have resulted in a competitive advantage to defendant bank over competitor banks, resulting in a gain of customers by defendant bank and a loss of customers to defendant bank by competing banks.

8.

The amount in controversy exceeds the value of $10,000 exclusive of interest and cost.

## CONCLUSIONS OF LAW

1.

■■ Jurisdiction under 28 U.S.C. § 1331(a) is based on the amount in controversy and the existence of a question of federal law under the National Banking Act, Title 12 U.S.Code. The relief sought is proper under 28 U.S.C. §§ 2201 and 2202.

2.

The "Agency Contracts" and other forms and written stipulations used by defendant bank do not basically alter the actual banking functions being performed by defendant bank at and through its employees at its mobile facilities. The receipt of cash, checks and other negotiable documents by defendant bank's employee at its armored truck constitutes doing banking business by defendant bank at its armored truck, regardless of stipulations in the accompanying transmittal slip. (Exhibit "B" to Reeves' affidavit). The exchange of cash for checks from the public by defendant bank's employees at defendant bank's armored truck or at other locations constitutes the cashing of checks by defendant bank at those locations. The dispatching and delivering of currency and coin by defendant bank's tellers and employees in defendant bank's armored truck to persons pursuant to an "Authorization of Debit" (Exhibit "D" to Reeves' affidavit), a debit request (Exhibit "C" to Reeves' affidavit), or a telephone request made either before or

after the armored truck left defendant's banking house, constitutes the withdrawal of funds and the cashing of checks by defendant bank at its armored truck. Dickinson v. First National Bank of Plant City, Florida, 400 F.2d 548, Fifth Circuit memo decision, dated September 12, 1968.

3.

■ The primary legislative purpose of the branch banking provisions of the National Banking Act, 12 U.S.C. § 36(c), is to place national and state banks on a basis of "competitive equality." This is accomplished by adopting, in full, the state branch banking law as federal law in the various states. First National Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed. 343 (1966); Jackson v. First National Bank of Valdosta, 349 F.2d 71 (5th Cir. 1965). As pointed out in the *Walker Bank* case in discussing a restriction of Utah branch banking law:

As to the restriction being a "method," we have concluded that since it is part and parcel of Utah's policy, it was absorbed by the provisions of §§ 36(c) (1) and (2), regardless of the tag placed upon it. 385 U.S. at 262, 87 S.Ct. at 497.

4.

■ The decision in the *Walker Bank* case, supra, was applied, as conceded by counsel for defendants, to virtually identical facts as are presented here by the Fifth Circuit Court of Appeals in Dickinson v. First National Bank in Plant City, Florida, 400 F.2d 548, memo decision dated September 12, 1968. The present activities of defendant bank come squarely within the definition of branch banking under the two-fold test of "branchness" set forth in *Dickinson*, supra, at page 555, and must therefore be governed by the banking law of Georgia and the policy it seeks to establish. 12 U.S.C. § 36(c) and (f).

5.

Branch banks are defined under Georgia law as "any additional place of business of any parent bank not located within the particular city * * * where its parent bank was chartered." Ga.Code § 13–201.1(b).

6.

After February 9, 1960, no new or additional branch banks may be established in Georgia. Ga.Code § 13–203(c).

7.

Under Georgia law, a bank office or bank facility means any additional place of business of a parent bank or a branch bank located in a particular city in which the parent bank or branch bank is situated and which has obtained a permit to operate. Ga.Code § 13–201.1(c) and (d).

8.

Under Georgia law, a parent bank may only operate one additional bank office or facility within the particular city, if the city within which the parent bank is situated has a population not exceeding 40,000. Ga.Code § 13–203.1.

9.

Under Georgia law:

No bank shall carry on or conduct or do a banking business in this State except on the premises of the place of business (banking house) established and operated under and pursuant to a permit from the Superintendent of Banks. A place of business for the doing of a banking business would include a parent bank, a branch bank, a bank office, or a bank facility. A banking business is the business which the bank is authorized by law to do. Ga.Code § 13–204.1.

10.

The defendant First National Bank of Cornelia is a parent bank within the meaning of Georgia law.

11.

■ The position of the Superintendent of Banks of the State of Georgia, whose duty it is to administer the banking laws of the State of Georgia, as reflected in his affidavit submitted in this case and as reflected by the present

legal proceedings in which he seeks to enjoin the defendant bank's armored truck bank messenger service, is that the defendant bank's activities constitute illegal branch banking and illegal banking activities under Georgia law. There is no decision of the Georgia Supreme Court contrary to this interpretation and the Superintendent of Banks' interpretation, therefore, must be accepted by this Court as the law of the State of Georgia made binding upon national banks under 12 U.S.C. § 36(f) as interpreted by the Court of Appeals in Dickinson v. First National Bank in Plant City, 400 F.2d 548, (September 12, 1968).

## 12.

The operation of the above described "armored truck bank messenger service" by defendant bank pursuant to paragraph 7490 of the Comptroller's Manual for national banks constitutes the operation of a branch bank outside the city limits of Cornelia, Georgia, and as such is illegal under Georgia law. Ga.Code § 13–203.

## 13.

In addition, the operation of the above described "armored truck banking messenger service" by defendant bank pursuant to paragraph 7490 of the Comptroller's Manual for national banks constitutes the carrying on, conducting or doing a banking business through banking facilities other than on the premises of the place of business of defendant bank and as such is illegal under Georgia branch banking law and under the policy it seeks to establish. Ga.Code § 13–204.1.

Accordingly, defendants' motions to dismiss or in the alternative for summary judgment are denied; and plaintiffs-intervenors' motion for summary judgment is granted. Relief follows as a matter of course. Judgment is therefore entered in favor of plaintiffs and against defendant bank, and costs shall be paid by defendant bank. An order setting forth the injunctive relief prayed for by plaintiffs is filed concurrently with this judgment.

It is so ordered.

## INJUNCTION

Because of the reasons set forth in the order dated today and filed concurrently herewith, it is hereby ordered that the defendant FIRST NATIONAL BANK OF CORNELIA, CORNELIA, GEORGIA, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, be forever restrained and enjoined from engaging in illegal branch banking in the form of an off-premises armored car banking messenger service, including the providing of a messenger service by means of an armored car or other vehicle, regardless of whether such is provided pursuant to an agreement wherein it is stipulated that the armored car messenger is the agent of the customer rather than of defendant Bank, for the purpose of:

(1) Dispatching and delivering to its customers and others, cash and currency for the purpose of cashing checks, making change, or any other purpose, regardless of whether or not it is stipulated that such cash and currency has been debited from customers' checking accounts at defendant Bank, and regardless of whether or not such cash and currency is provided pursuant to a written or oral "authorization of debit", "request for funds", or other order or request; and

(2) Picking up and receiving cash, checks or other items for deposit to customers' accounts or for other processing at defendant Bank, regardless of whether or not such deposits and other items collected are stipulated or considered as having been received by defendant Bank only when they are actually delivered to a teller at the defendant Bank's banking house.

In order to afford defendant reasonable opportunity to notify its customers of this order, the effective date of this injunction shall be November 15, 1968.

The request to stay the same indefinitely is denied.

It is so ordered.